# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeffrey Lee Jones, | Case No. 20-cv-1409 (DWF/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Minnesota, Joanne Hagfors, Kathy Casady, Gladys D. Mejia, Regions Hospital, St. Paul Police, Ramsey County, Donald Ryan, Hennepin County Child Protection and Social Services, Robert A. Manson, and Stephen Nesser, | |
| Defendants. | |

This action comes before the Court on Plaintiff Jeffrey Lee Jones's (1) Complaint (Dkt. 1); (2) Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2) ("IFP Application"); (3) Hearing Request (Dkt. 10); and (4) filing titled "Affidavit and Support and Complaint Motion Request Rule 113.01 to Merge" (Dkt. 16) ("Merger Request"). For the following reasons, the Court recommends dismissing the Complaint and recommends denying the IFP Application, Hearing Request, and Merger Request as moot.

## I.   BACKGROUND

### A.   Complaint

Jones commenced this action by filing the Complaint, which the Court received on June 18, 2020.  (*See* Dkt. 1 at 1.[1])  He asserts that this Court has jurisdiction over this action based on 28 U.S.C. § 1331's grant of federal-question jurisdiction.  (*See id.* at 6.)  Asked the specific basis for federal-question jurisdiction, Jones writes, "209. Estoppel; U.S. Title 18 Code § 113."  *Id.*

The Complaint's factual allegations are hard to follow.  (*See generally id.* at 6-11.)  Between the Complaint and several of Jones's other filings in this action (*see, e.g.*, Dkts. 3, 10), the Court believes that the key allegations are as follows.[2]

Jones is the biological father of two daughters: J.M. (presently 27 years old) and K.M. (presently 25 years old).  (*See* Dkt. 1 at 7; Dkt. 3 at 1.)  Defendant JoAnne Hagfors

---

[1]   Citations to court filings use the page numbers provided by this Court's CM/ECF filing system.

[2]   Strictly speaking, Jones's Complaint should be a standalone document; the Court and other parties should not have to review other, later filings to understand this suit's claims.  *See, e.g.*, Fed. R. Civ. P. 8(a)(2) (stating that "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"); *Zelenak v. Larson*, No. 15-CV-3315 (PJS/TNL), 2016 WL 6584926, at *6 (D. Minn. Oct. 6, 2016) ("[I]t is not the Court's function to sift through Plaintiff's voluminous papers and essentially craft a complaint—factual allegations and bases for recovery—for [him]." (citing *Gurman v. Metro. Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011)), *R.&R. adopted*, 2016 WL 6584910 (D. Minn. Nov. 4, 2016).  In this case, though, reviewing the other documents helps flesh out the Complaint's allegations, and (as noted above and discussed below) the Court's review ultimately leads to a dismissal recommendation even after considering these additional materials.

(born JoAnne Casady) is J.M's and K.M.'s biological mother; Defendant Kathy Casady is their maternal grandmother.[3] (*See* Dkt. 1 at 7.)

Jones states that J.M. and K.M. have been sexually abused by two different men. First, he contends that they were abused by Hagfors's former husband, whom the Court will refer to as "E.R." (*See id.* at 9, 11.) Second, he also asserts that they were abused by an adoptive father, whom the Court will refer to as "P.M." (*See* Dkt. 3 at 1.) Alongside these accusations, Jones repeatedly states that he himself has never sexually abused J.M. or K.M. (*See, e.g.*, Dkt. 1 at 10; Dkt. 3 at 2.) In general, the Complaint alleges that numerous people have ignored or disregarded facts relevant to E.R.'s and P.M.'s alleged abuse of Jones's daughters, or spread false information suggesting that Jones himself abused them. (*See generally* Dkt. 1 at 6-11; Dkt. 3 at 1-4; Dkt. 10 at 1-3.)

With this background in place, the Court will address Jones's allegations about each Defendant.

### 1. Hagfors, Casady, and Regions Hospital

Jones alleges that Hagfors and Casady brought J.M. and K.M. to Regions Hospital, where Casady worked. (*See* Dkt. 1 at 7.) Once there, J.M. and K.M. underwent some sort of medical examination whose results were "falsified." (*Id.*) The exact falsification at issue is unclear, but the examination apparently concerned whether or not (and when) J.M. and K.M. may have been sexually abused. (*See id.*; *see also* Dkt. 10 at

---

[3] Jones spells "Casady" in numerous ways throughout his filings; for consistency, the Court uses "Casady" throughout this document.

3-4.) Jones also suggests that when J.M. and K.M. were at Regions Hospital, medical records for the pair assigned them the last name of Casady. (*See* Dkt. 1 at 9.) This assignment's significance is unclear; Jones appears to think that filing his daughters' records under the Casady name impeded him from investigating potential abuses that they suffered. Jones further alleges that he has been having unspecified "issues in his current medical records" because Regions Hospital has falsely labelled him as a "sex offender." (*Id.*)

Jones's purported causes of action against Hagfors, Casady, and Regions Hospital are unclear. Given its duty to construe pro se pleadings liberally, *see, e.g.*, *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), the Court construes the Complaint as suggesting that Hagfors, Casady, and Regions Hospital are liable to Jones for some combination of defamation, libel, and/or slander. (*See, e.g.*, Dkt. 1 at 7 (specifically referring to defamation, libel, and slander).) Given the assertions of a falsified medical report, the Court also construes him as suggesting that Hagfors, Casady, and/or Regions Hospital may each be guilty of the Minnesota state-law offense of falsely reporting a crime. *See* Minn. Stat. § 609.505.[4]

---

[4] Under § 609.505, subd. 1, "Whoever informs a law enforcement officer that a crime has been committed or otherwise provides information to an on-duty peace officer, knowing that the person is a peace officer, regarding the conduct of others, knowing that it is false and intending that the officer shall act in reliance upon it, is guilty of a misdemeanor." *See also id.* § 609.175, subd. 2 (criminalizing conspiracies to commit crimes).

4

### 2. Stephen Nesser and "Hennepin County Child Protection and Social Services"

The institutional affiliation of Stephen Nesser is unclear. The Complaint's list of Defendants states that he works for "Family Court/D.H.S." (Dkt. 1 at 2-3.) At other points, Jones refers to Nesser as a "former Hennepin County Employee Family Court Evaluator" (Dkt. 3 at 1); elsewhere he suggests that Nesser may work at Hennepin County Medical Center and/or Regions Hospital (*see* Dkt. 10 at 2-3). All this said, it appears to the Court that to the extent the Complaint details purported liability of Defendant "Hennepin County Child Protection and Social Services"—which the Court construes as a reference to Hennepin County Child Protection Services ("HCCPS")—that liability springs from Nesser's work (or prior work), in some capacity, for that entity.

Jones alleges that Nesser threatened him (Jones) with "bodily injuries" (Dkt. 1 at 7, 11; *see also* Dkt. 10 at 8) and threatened to "cause injuries to [Jones's] reputation" (Dkt. 1 at 11). Jones also contends that certain unspecified "false responses and inner workings" by Nesser (and others) led to the falsified medical examination at Regions Hospital. (*Id.* at 7.) He asserts that Nesser has filed reports with police authorities that falsely claim that Jones sexually assaulted his own daughters. (*See* Dkt. 3 at 2.) Jones further states that Nesser has "been identified" in an audio recording as threatening Jones's life, as well as threatening to subject K.M. and J.M. to sexual abuse by placing them into adoptive care with a "sex offender." (*Id.* at 1; Dkt. 1 at 8, 11.) Finally, Jones alleges that some unspecified "inner working" by Nesser and others led Minnesota

5

officials to falsely report to North Dakota officials that Jones had sexually abused his daughters. (*See* Dkt. 1 at 11; Dkt. 3 at 3.)

Based on these allegations, the Court construes Jones as arguing that Nesser is liable for defamation, libel, and/or slander. The Court also reads the Complaint as claiming that Nesser has violated Minn. Stat. § 609.505. Furthermore, given Jones's discussion of Nesser's purported threats, the Court construes Jones as alleging that Nesser has also violated Minnesota's statutory law against coercion. *See* Minn. Stat. § 609.27, subd. 1(1).[5] As for HCCPS, the Court construes Jones's claims against it as vicarious-liability claims based on Nesser's conduct.

### 3. Donald Ryan and Ramsey County

Jones initially identifies Donald Ryan as working for Ramsey County (*see* Dkt. 1 at 2), though in other places he suggests that Ryan worked at relevant times for Hennepin County's Department of Human Services (*see* Dkt. 3 at 3-4). Again, whatever Ryan's affiliation, the Court understands Jones's view of Ramsey County's liability to be that the county is vicariously liable for Ryan's relevant conduct.

The substantive allegations concerning Ryan are basically a subset of those targeting Nesser. Jones states that Ryan was one of the people whose unspecified "false responses and inner workings" led to the "falsified medical examination" that occurred at

---

[5] Section 609.27, subd. 1, states that "[w]hoever orally or in writing makes any of the following threats and thereby causes another against the other's will to do any act or forbear doing a lawful act is guilty of coercion." First on the list of "following threats" is (in relevant part) "a threat to unlawfully inflict bodily harm upon, or hold in confinement, the person threatened or another."

6

Regions Hospital. (Dkt. 1 at 7.) Jones also alleges that Ryan has threatened Jones as well as J.M. and K.M. with death, bodily injury, and/or sexual abuse. (*See id.* at 8.) Jones also contends that Ryan knew, before J.M. and K.M. were placed as adoptive children with P.M., that P.M. had been determined to be a sex offender in France. (*See* Dkt. 3 at 1.)

From these allegations, the Court construes Jones as claiming that Ryan is legally liable for defamation, libel, and/or slander. Given the alleged involvement with a falsified medical examination, the Court construes Jones as claiming that Ryan has been involved with making false statements to authorities in violation of Minn. Stat. § 609.505. Because of the purported threats from Ryan to Jones, the Court further construes Jones as asserting that Ryan violated Minnesota's anticoercion statute. Finally, when Jones states that Ryan knew that a potential adoptive parent had been previously identified as a sex offender, the Court construes Jones as arguing that Ryan is liable for negligence.

### 4. Robert A. Manson

Jones identifies Robert A. Manson as an attorney who previously represented Jones in matters before the Hennepin County Family Court and/or the Hennepin County Juvenile Court. (*See, e.g.*, Dkt. 10 at 3.) Jones states that Manson attended at least three court hearings and/or depositions—presumably involving Jones-related matters—without Jones himself being present. (*See id.* at 3; *see also* Dkt. 3 at 3.) Jones reports that a judge told him (Jones) that Manson "was not representing [Jones] in the best interest of Children's [*sic*]" (Dkt. 3 at 3; *see also* Dkt. 1 at 10); as the Court understands this, Jones

7

thinks that this indicates that Manson was inappropriately failing to act in Jones's interest during court proceedings. Jones also contends that Manson is among the people whose unspecified "false responses and inner workings" led to the "falsified medical examination" that occurred at Regions Hospital. (Dkt. 1 at 7.)

Based on these allegations, it appears to the Court that Jones's main cause of action against Manson is some form of legal malpractice. Given the assertion of Manson's involvement with a falsified medical examination, the Court will also construe Jones as claiming that Manson is liable for defamation, libel, and/or slander, and potentially guilty of falsely reporting a crime under Minn. Stat. § 609.505.

### 5. "St. Paul Police," Gladys Mejia, and the State of Minnesota

With respect to Defendant "St. Paul Police," Jones means the St. Paul Police Department ("SPPD"). (*See* Dkt. 1 at 2.) The Complaint suggests that the spread of abuse rumors about Jones caused the SPPD to "act[] on" statements by Nesser, Manson, and Ryan, which led to the "falsified medical examination" at Regions Hospital. (*Id.* at 7.) Jones also asserts that on February 19, 2019, after he visited the Minnesota Attorney General's office in St. Paul, SPPD officers arrested and detained him. (*See* Dkt. 3 at 3.) As best as the Court can tell, Jones believes this arrest occurred due to a "falsified police report": Gladys Mejia, who apparently worked at the Attorney General's office, allegedly told authorities that Jones had said that he planned to purchase a firearm and kill a detective working for the Bloomington Police Department. (*See* Dkt. 10 at 1.) Jones denies making any such threat. (*See, e.g.*, Dkt. 3 at 4.)

8

During or immediately his detention, two SPPD employees allegedly threatened Jones, telling him to "back off any lawsuit" against various individuals. (*Id.* at 3-4.) According to Jones, the employees told him that, if he refused to stop pursuing litigation, the SPPD would charge him with making "terroristic assault threats" toward the Bloomington detective. (*Id.* at 4.)

As for the State of Minnesota, Jones states that "Minnesota had [him] arrested" as a result of Mejia's purportedly false report. (Dkt. 1 at 11.) Jones also alleges that unidentified "Minnesota officials told North Dakota" that Jones had sexually abused his daughters. (*Id.*)

Based on the allegations here, the Court construes Jones as suggesting that Mejia is liable for defamation, libel, and/or slander, and guilty of falsely reporting a crime under § 609.505. With respect to the SPPD, the Court construes Jones as raising a First Amendment retaliation claim, as well asserting that SPPD officers may have engaged in criminal coercion under § 609.27. To the extent Jones claims that SPPD conduct led to a "falsified medical examination," the Court is unclear what Jones means, but given its duty to construe pro se pleadings liberally, the Court will construe Jones as claiming that SPPD itself is also guilty of falsely reporting a crime under § 609.505.

Finally, for the State of Minnesota, the Court construes Jones as suggesting that the State should be vicariously liable for Mejia's conduct. Given Jones's assertions about communications between Minnesota officials and "North Dakota"—presumably North Dakota officials—the Court construes the Complaint as seeking to hold the State of

9

Minnesota liable for defamation, libel, and/or slander because of its employees' communications.

### 6. Request for Relief

Jones's request for relief is also hard to follow. He purports to seek "damages in court costs, summons and services waived" as well as "sheriff's costs," and asks for a "magistrate" to determine the amount. (Dkt. 1 at 12.) To the extent that "amounts are in excess," he states, he asks the "courts to [waive them] under I.F.P." (*Id.*) It appears that Jones is seeking (1) costs that Jones could avoid if granted *in forma pauperis* ("IFP") status with (2) monetary relief Jones can seek through suit. For present purposes, the Court construes Jones to seek compensatory and/or punitive damages for the conduct alleged in the Complaint.

### B. Hearing Request

On July 13, 2020, Jones filed the Hearing Request. (*See* Dkt. 10 at 1.) This presents various factual allegations—some repeated from the Complaint, some new—and asks the Court to hold a hearing in this action. (*See id.* at 3.) The Hearing Request also asks the Court to issue summons to Defendants and reiterates Jones's request to proceed IFP.

### C. Merger Request

On July 24, 2020, Jones filed the Merger Request in this action as well as another action in this District, *Jones v. Hennepin County Medical Center*, No. 20-CV-0497 (PAM/BRT). (*See* Dkt. 16 at 1.) The Merger Request asks the courts overseeing both actions to "merge" the two cases. (*Id.*) He specifically asks that both cases be handled

10

by Senior U.S. District Judge Donovan W. Frank, and that the case be transferred "to St. Paul Court House"; he contends that he experiences bias at the Minneapolis courthouse because certain court staff (including the Clerk of Court) are allegedly related to people involved in this matter. (*See, e.g., id.*) The Merger Request also asks the Court to appoint Jones counsel. (*See id.* at 2.)

In Case No. 20-CV-0497, Senior U.S. District Judge Paul A. Magnuson addressed the Merger Request (as it pertained to that case) in an order this August. (*See* Order, *Jones v. Hennepin County Medical Center*, No. 20-CV-0497 (PAM/BRT) (D. Minn. Aug. 7, 2020).) Judge Magnuson denied Jones's request to merge his two cases; this was part of the Order's broader adoption of a report and recommendation recommending that Case No. 20-CV-0497 be dismissed with prejudice. (*See id.* at 2, 4.)

## II. ANALYSIS

### A. Complaint

#### 1. Screening standards

Jones did not pay this action's filing fee; instead, he applied for permission to proceed IFP in this action. Under 28 U.S.C. § 1915(e)(2)(B)(ii), in a case where a plaintiff seeks to proceed IFP, then "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." While § 1915(e)(2) speaks in terms of "the case," caselaw is clear that courts may also dismiss portions of a case that run afoul of § 1915(e)(2)(B). *See, e.g.*, *Bonczek v. Bd. of Trustees Nat'l Roofing Indus. Pension Plan*, No. 14-CV-3768 (JRT/LIB), 2015 WL

1897837, at *4 (D. Minn. Apr. 23, 2015) (dismissing portion of action under § 1915(e)(2)(B)); *Abduljabbar v. Minn. Dep't of Transp.*, No. 14-CV-3583 (ADM/JSM), 2014 WL 7476513, at *4 (D. Minn. Nov. 5, 2014) (same), *R.&R. adopted*, 2015 WL 75255 (D. Minn. Jan. 6, 2015).

In reviewing whether a complaint (in whole or in part) states a claim on which relief may be granted, this Court must accept as true all of the complaint's factual allegations and draw all reasonable inferences in Plaintiff's favor. *See, e.g.*, *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). The complaint's factual allegations need not be detailed, but must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing a complaint's sufficiency, a court may disregard legal conclusions that are couched as factual allegations. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See, e.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Furthermore, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12(h)(3) speaks of dismissing "the action," but again, courts routinely use the rule to dismiss portions of actions where jurisdiction is lacking. *See, e.g.*, *Chernin v. United States*, 149 F.3d 805, 813-14 (8th Cir. 1998); *In re Polaris Mktg., Sales Practices, & Prod. Liab. Litig.*, 364 F. Supp. 3d 976, 982-84 (D. Minn. 2019).

**2.     Discussion**

As Rule 12(h)(3) suggests, courts have an obligation to police their own jurisdiction. The Court thus must address, as a preliminary matter, whether subject-matter jurisdiction exists here.

Most of Jones's causes of action discussed above rest on Minnesota common law or Minnesota statute. These are matters over which a federal court generally lacks jurisdiction. Under 28 U.S.C. § 1367(a), however, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." This means that if this Court has original jurisdiction over some of this action's claims, supplemental jurisdiction might exist for the others. The Court must therefore decide whether it has original jurisdiction over any of the Complaint's potential claims.

Given the discussion of the Complaint above, as well as its potential causes of action, there appear to be two potential routes through which this Court might have federal-question jurisdiction over this matter.[6] First, Jones claims that this Court has jurisdiction on the basis of 18 U.S.C. § 113. (*See* Dkt. 1 at 6.) Second, the Court sees the

---

[6]     Diversity jurisdiction is a nonstarter here. For a matter to fall within diversity jurisdiction, there must be "complete diversity of citizenship of the litigants"—i.e., "no defendant holds citizenship in the same state where any plaintiff holds citizenship." *E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015) (quoting *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007)). In this action, Jones as well as numerous defendants are Minnesota citizens (*see* Dkt. 1 at 1-4), so complete diversity is lacking.

13

Complaint as presenting one cause of action that plainly arises from federal law—specifically, Jones's First Amendment retaliation claim against the SPPD. (*See* Section I.A.5 *supra*.)

The Court will consider 18 U.S.C. § 113 first. In No. 20-CV-0497, two key obstacles prevented Jones from raising a § 113 claim:

> First, § 113 does not provide a private right of action. Given that private individuals generally cannot press claims under federal criminal statutes, and the decisional law concerning § 113 gives no reason to doubt that conclusion as to § 113, the Court concludes that Plaintiff cannot sue Defendants through that provision.
>
> Second, even if Plaintiff could sue Defendants under § 113, he would still fail to state a claim. As noted above, § 113 applies to assaults that occur "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 113(a). The U.S. Code defines that phrase at 18 U.S.C. § 7, listing nine different classes of qualifying territory. *See id.* § 7(1)–(9). Nothing in the Amended Complaint suggests that any relevant conduct occurred within the United States's "special maritime and territorial jurisdiction," which means that Jones has failed to state a § 113 claim.

*Jones v. Hennepin Cty. Med. Ctr.*, No. 20-CV-497 (PAM/BRT), 2020 WL 6106268, at *3 (D. Minn. July 21, 2020) (citations omitted), *R.&R. adopted*, 2020 WL 4559425 (D. Minn. Aug. 7, 2020). These problems affect Jones just as much in this action. As a result, he cannot bring a § 113 claim here.[7]

This leaves Jones's First Amendment retaliation claim against the SPPD as a potential federal-jurisdiction hook. But the Court concludes that Jones has failed to state a claim here as well.

---

[7] The Court also observes that it is far from clear that the Complaint has any allegations detailing any "assault" by any Defendant.

14

As a first issue, the Court must note the capacity in which Jones is suing the SPPD. Suits against local-government actors alleging constitutional-right violations generally proceed as claims under 42 U.S.C. § 1983, and against individual defendants, such claims proceed as either individual-capacity claims, official-capacity claims, or both. In this case, Jones does not name any specific individual SPPD employees as defendants—he is apparently just suing the SPPD. His First Amendment retaliation claim must therefore proceed as an official-capacity claim.

To bring an official-capacity claim under § 1983, a plaintiff must allege that the relevant municipal entity itself caused the relevant constitutional violation. *See, e.g.*, *Brewington v. Keener*, 902 F.3d 796, 801-02 (8th Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *Calhoun v. Washington Cty. Cmty. Servs. Child Support Unit*, No. 18-CV-1881 (ECT/HB), 2019 WL 2079834, at *4 (D. Minn. Apr. 23, 2019) (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)), *R.&R. adopted*, 2019 WL 2075870 (D. Minn. May 10, 2019). A municipal entity's liability can result from "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citing *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)); *see also Calhoun*, 2019 WL 2079834, at *4 (same point (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)).

Numerous cases explain how to allege a relevant policy, custom, or failure to train, but reviewing that precedent is unnecessary here. Neither the Complaint nor any of Jones's other filings say anything about any relevant SPPD policy, custom, or failure to

train. Consequently, the Complaint fails to state any First Amendment retaliation claim against the SPPD. And because the Complaint's only First Amendment retaliation claim appears to be the one against the SPPD, this pleading failure means that Jones fails to state any First Amendment retaliation claim.

Because neither 18 U.S.C. § 113 nor the asserted First Amendment retaliation claim provide a basis for federal-question jurisdiction, it follows that this Court should recommend this action's dismissal for lack of jurisdiction. Of all the various claims discussed in Section I.A above, those that remain are either classic common-law causes of action (e.g., defamation, libel, slander, negligence, malpractice) or potential statutory violations. Without any federal-law hook, these state-law claims alone cannot give this federal court jurisdiction over Plaintiff's suit. *See, e.g.*, *Parkview Homes, LLC v. City of Lexington*, No. 15-CV-3692 (SRN/BRT), 2017 WL 758573, at *5 (D. Minn. Feb. 27, 2017) ("[A] court may decline to exercise supplemental jurisdiction where it 'has dismissed all claims over which it has original jurisdiction.' . . . 'In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting 28 U.S.C. § 1367(c)(3); *Wilson v. Miller*, 821 F.3d 963, 970-71 (8th Cir. 2016)).

Having recommended dismissal of all claims over which the Court potentially has original jurisdiction, the Court further recommends declining any exercise of supplemental jurisdiction over Plaintiff's remaining state-law claims. This results in a

16

recommendation that the state-law portions of the Complaint be dismissed without prejudice for lack of subject-matter jurisdiction.

### B. IFP Application, Hearing Request, and Merger Request

Because the Court recommends this action's dismissal, the Court further recommends that Jones's IFP Application, Hearing Request, and Merger Request all be denied as moot.

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff Jeffrey L. Jones's Complaint (Dkt. 1) be **DISMISSED WITH PREJUDICE** to the extent it seeks to state a claim for violation of 18 U.S.C. § 113.

2. The Complaint be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to the extent it seeks to state a First Amendment retaliation claim against Defendant "St. Paul Police."

3. The remainder of the Complaint be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

4. The Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2), Hearing Request (Dkt. 10), and filing titled "Affidavit and Support and Complaint Motion Request Rule 113.01 to Merge" (Dkt. 16) all be **DENIED** as moot.

Dated: October 23, 2020            *s/Elizabeth Cowan Wright*
                                   Elizabeth Cowan Wright
                                   United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).